### THE DOMINGO DE LARRINAGA.

### THE EDWARD LUCKENBACH.

(District Court, E. D. New York. July 26, 1909.)

1. TOWAGE (§ 11*)—TUG AND TOW—COLLISION WITH TOW—USE OF LONG HAWSERS IN NEW YORK HARBOR.

   The use of long tow lines in New York Harbor, while not to be commended, does not render the tug liable for damages caused to her tow by collision with another vessel through the fault of the latter, to which the length of the tow did not contribute.

   [Ed. Note.—For other cases, see Towage, Cent. Dig. § 18; Dec. Dig. § 11.*]

2. COLLISION (§ 95*)—STEAMER AND VESSEL IN TOW—NEGLIGENT NAVIGATION.

   A collision in New York Harbor between a steamer going out to sea and a schooner in tow coming through Gedney's Channel into the Main

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Ship Channel *held* to have been due solely to the fault of the steamer in
failing to exercise care to avoid crossing the tow, although the schooner's
lights could be seen, showing that she was in tow.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 200–202; Dec.
Dig. § 95.*]

In Admiralty. Suit for collision.

MacFarland, Taylor & Costello, for libelant.

Butler, Notman & Mynderse, for the Domingo De Larrinaga.

Peter S. Carter, for the Luckenbach.

CHATFIELD, District Judge. The libelant is the owner of the
schooner Arthur C. Wade, which upon the 20th of March, 1906, was
brought into collision with the steamer Domingo De Larrinaga in
what is known as Gedney's Channel, in New York Harbor, at about
8:12 in the evening. The testimony shows that the Wade, with a cargo
of lumber, through some leak which prevented her from proceeding
under sail (but which was kept down by the pump and did not inter-
fere with her progress in tow), had been brought from Norfolk, Va.,
by the steam tug Edward Luckenbach. At the time in question this
tow was proceeding westward in Gedney's Channel, the Luckenbach
having a barge on a hawser 150 to 200 fathoms in length, and back of
the barge the schooner Wade, with a hawser 150 fathoms long between
the barge and the schooner. The trip had been made thus from Nor-
folk, the weather being clear and the sea calm, and the captain of the
Luckenbach testified that he did not shorten the hawsers before going
through the channels of New York Harbor, because of some ground
swell which might cause trouble if the schooner and the barge were
hauled up close to each other and the tug.

The testimony of the witnesses seems to place the position of this
tow somewhat north of the center of the channel, or nearer the red or
northern line of buoys marking Gedney's Channel, and the three boats
in the tow were proceeding in a comparatively straight line, parallel
to the buoys of the channel, prior to the accident. The tug and the
barges had proper lights and seem to have been properly steered, the
barge attempting to follow in the wake of the tug and the schooner in
the path of the barge; and the only testimony in relation to their
movements, especially that of the helmsman upon the Wade, which
seems entirely worthy of credibility, is to the effect that the path of the
tow, up to the time of the accident, had not substantially changed
from a straight line. The testimony fixes the location of the Wade
at the time of the collision at a point nearly through Gedney's Channel,
toward the west. The men upon the tug observed, while they were still
in Gedney's Channel, the steamer Domingo De Larrinaga coming
down the Main Ship Channel, some mile or more away, on her way to
sea, and proceeding at what the testimony shows was a speed of some
nine or ten knots per hour. The Larrinaga observed a tug, and is
said by her witnesses and by the pilot who was on board to have made
out from the light carried that a tow was following, but did not ob-
serve, until just as the Larrinaga was entering Gedney's Channel, the
lights of the schooner Wade. Prior to that time it would appear that

the officers and pilot of the Larrinaga had assumed that the tow consisted of the Luckenbach and the barge, or, if they had any idea that any other vessels were in the tow, they did not locate them by their lights.

Gedney's Channel is extremely narrow, and the turn from the Main Ship Channel into Gedney's Channel requires a vessel passing out to operate under a strong port helm, especially if any other vessels be in the channel. The Larrinaga, thus passing out and meeting the tow, cannot be considered as crossing and having the tow upon her starboardhand, as is suggested by libelant, so as to bring her under rule 19 (Act June 7, 1897, c. 4, 30 Stat. 101 [U. S. Comp. St. 1901, p. 2883]), but she was bound by the provisions of rule 25 that in narrow channels each vessel must keep to starboard, but as near to the center of the channel as possible. Under these circumstances the Larrinaga was bound to proceed in such a way as not to intersect with her course the waters of the channel where the tow had a right to be, yet it would seem that she was unable to stop directly at the turn because of the conditions of wind and tide. The witnesses agree that the tide was running ebb at the rate of about a mile and a half per hour, that the wind was blowing from the W. N. W., or almost directly down Gedney's Channel; and, as the Larrinaga was making a turn from the Main Ship Channel into Gedney's Channel, the wind and tide would both have a tendency to set her upon the mud bank at the western corner of the channel. The testimony shows that there was no moon, some of the witnesses thinking that it was starlight and some that it was cloudy; but all agree that there was no fog or storm, and that the lights of all the vessels could be seen at the distances with which we have to do in this case.

Some testimony was introduced to indicate that the Larrinaga made an abrupt turn to port, and it is argued from this that the helmsman of the Larrinaga put his helm to starboard, rather than to port, under a mistake of orders. But the testimony of every one upon the steamer contradicts this, and no such movement of the vessel could have taken place without notice by some one, and such a cause is not necessary to explain what happened. The Larrinaga gave a signal of one whistle to the Luckenbach. She gave no signals at all to the Wade, nor did she pay any attention to the fact that the Wade was a sailing vessel, and that a steamer, therefore, could not cross her bow with impunity. The testimony shows that the Larrinaga did cross the bow of the Wade. An examination of the chart and a consideration of all the testimony would indicate that the Larrinaga must have described a considerable arc in making the turn into Gedney's Channel at the speed under which she was proceeding, and from a point so close to the corner as she had to go when passing the Luckenbach and the Independent. Further, the Larrinaga had shown her red light to all of the vessels until just before the collision, when her green light became evident to those upon the Wade, and yet the testimony agrees that she passed across the Wade's bow, coming in collision and doing damage, and then proceeded around the Wade, passing her to starboard, and then going to sea.

The testimony shows that the Wade at some time came to anchor almost in the line of the black or southerly line of buoys of Gedney's

Channel, and between buoy 6 and 8. As soon as possible she displayed a flare light as a signal of distress. Those upon the Larrinaga did not see or give any heed to this signal; but at the speed at which they were going it may be assumed that this shows nothing beyond the fact that they had already reached a point far from the scene of the collision, and did not pay further attention to the Wade. The Wade was some hours later taken up to Sandy Hook by the Luckenbach, which had learned of the loss of its tow, and which had come to anchor after arriving at a safe place of anchorage. The damage to the Wade was repaired, and for this the libel was filed. The Larrinaga also suffered some injuries, but no claim has ever been made, and she has defended, not only by alleging that she was without fault herself and that the Wade was at fault in the way in which she was steered, but also the Larrinaga has brought the Luckenbach into the case as a party defendant, and claims that the Luckenbach was at fault in proceeding at too great speed, with too long hawsers, and in following an improper course in making the turn into the channel in such a way that the wind and ebb tide necessarily drifted her tow down into the waters which the Larrinaga had a right to be navigating under these circumstances.

None of these objections seem to be borne out by the testimony, with the exception of the question of the length of the hawsers. While there is some difference as to the exact position occupied by the Luckenbach at the time of the accident, and the weight of the testimony would seem to indicate that she had, at least partially, made the turn into the Ship Channel, and that therefore the tow must have begun to settle across the channel, under the influence of the wind and tide, nevertheless no negligence has been shown in this respect; nor did the positions of the vessels relieve the Larrinaga from the care which should have been exercised in making the turn at the speed at which she was proceeding.

As to the length of hawsers, a comparatively difficult question presents itself. A vessel using hawsers of such a length in towing through the narrow channels of New York Harbor is bound to use the greatest caution, and must be held responsible for any accident that is caused directly from the unnecessary length of the tow, and must follow such course as not to impede navigation more than would be the case if shorter towing lines were in use, unless extraordinary conditions of storm or danger compel the maintenance of the long tow lines, and in such time of storm or danger the care of the tug must be measured by the conditions which exist. In the present instance no particular danger was present. The Luckenbach merely considered it safer to keep the barges far apart than close together, but must therefore be held for any accident which was occasioned merely by the length of the tow, or by the inability of the boats to follow in the proper course.

On the evidence as a whole, however, it does not seem that in the present case either the length of the tow or the course followed by the tug affected the situation. The Larrinaga was able to observe the tow at all times, to make out the signals of the Wade indicating that she was in tow, and to avoid the difficulty which evidently presented

itself in making the turn into Gedney's Channel. She used no care in so doing, and whether she mistook the position of the Wade, or assumed that she was not in tow, or whether she was unable to prevent intersecting the path of the tow by the course which, under her own momentum and velocity, she was compelled to take, makes no difference. The evidence indicates that the accident could have been avoided by the Larrinaga with due care and a proper appreciation of the situation; and under such circumstances, while the use of such long tow-lines cannot be commended or countenanced, nevertheless their presence, unless contributing to the accident, should not be made the basis of merely punitive damage.

The libelant may have a decree against the Larrinaga alone.